IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KRISTOFER LEWALLEN, )
 )
      Plaintiff, )
 )
v. ) No. 3:08-cv-520
 )
SCOTT COUNTY, TENNESSEE, )
 )
      Defendant. )

## **MEMORANDUM OPINION**

This civil action came before the court for a bench trial on April 8, 2010. The plaintiff seeks compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") for overtime he performed as a K-9 officer for the Scott County Sheriff's Department. The following is the court's findings of fact and conclusions of law.

### **I. FINDINGS OF FACT**

Kristofer Lewallen began his duties as a K-9 officer on July 1, 2006, when Sheriff Jim Carson ordered him to pick up a black Labrador dog named "J.J." Sheriff Carson told Lewallen to begin working with the dog and eventually J.J. would be trained as a narcotics detection dog. J.J. lived with Lewallen and Lewallen fed, trained and cared for him. These activities with J.J. were "off the

clock," that is, they were performed in addition to Lewallen's regularly scheduled work.

In September 2006, Sheriff Anthony Lay took office, and Lewallen's immediate supervisor became Chief Deputy Bobby Ellis. Lewallen continued to feed, train and care for J.J. under Sheriff Lay. In October 2006, J.J. received training in narcotics detection and was certified as a narcotics detection dog. In addition to the previous care, Lewallen now needed to perform maintenance training with J.J. to keep him certified. Lewallen was not compensated for any of the time he cared for and trained J.J., although Scott County paid for food, veterinary care, and other necessary items for the dog.

Lewallen was trained as a K-9 officer in January 2007. At that training Lewallen learned for the first time that K-9 officers should receive extra pay for the time they spent with their dogs off the clock. Lewallen researched the requirements and submitted the information to Chief Ellis, who gave it to the Scott County finance director. The information included a statement that the Department of Labor requires that the time spent with police dogs is compensable time and, if the hours spent with the dog exceed the 40-hour work week, time and one-half compensation must be paid.

In March 2007, Sheriff Lay called a mandatory meeting of the Sheriff's Department employees where he announced the suspension of the County K-9 program. Nevertheless, Lewallen still had to care for and train J.J.

2

since he still had possession of the dog.  During this time, Lewallen kept training logs for J.J., which were given to Chief Ellis.  The training logs showed the amount of time Lewallen was training J.J. during his off-duty hours – 45 minutes to six hours a day on his days off and after his shifts.

Sheriff Lay allowed the K-9 officers to begin working with their dogs again in September 2007, and the Scott County K-9 officers were scheduled and sent for training and certification at that time.  Lewallen asked Chief Ellis about compensation for his off-duty care and training of his dog, and Ellis said that the Sheriff knew about his request for overtime compensation.  Other Scott County K-9 officers also asked Chief Ellis about getting paid for their overtime.  Lewallen prepared a proposed schedule that gave each K-9 officer two hours of paid time per scheduled work day as compensation for the care and training of the dogs, and he submitted the plan to Chief Ellis.  He never received any response to his proposal.

Lewallen believed that it was a policy of the Sheriff's Department that the deputies should not accumulate compensatory time for which they would be paid.  He testified that he did not have permission to record the time he spent with his dog on his time sheets.  Occasionally he would work more hours on duty or patrol, and these hours would be reflected on his time sheets.  He "burned" these hours by taking time off.  There was a strict chain of command, and Lewallen

knew he could not go to anyone other than Chief Ellis with his request for overtime pay.

In early November 2008, Chief Ellis asked Lewallen about a girl who had a misdemeanor drug charge and who had attended a gathering at Lewallen's house. Lewallen explained the circumstances and then asked again about getting paid for working with his dog. He told Chief Ellis that he might hire a lawyer and file a lawsuit against the County. A few hours later Chief Ellis demoted Lewallen from K-9 officer to a patrol officer with a reduction in pay. Someone from Scott County picked up the dog on November 21, 2008. Lewallen was promoted to detective in August 2009.

Lewallen claims one and one-half hours per day of overtime related to his responsibilities of caring for and training his narcotics dog for 874 days. Specifically, on a daily basis Lewallen provided food and water for his dog; brushed the dog and its teeth; administered arthritis medication; and cleaned the kennel area. In addition, the training log examples submitted as evidence show that he often trained his dog for several hours after his shift or on his days off. While Lewallen admits that one and one half hours is an estimate, Scott County has not produced any proof that this estimate is too high or unreasonable.

When Lewallen was hired as a deputy with the Scott County Sheriff's Department in October 2001, he signed a "Compensatory Time Agreement" which provided that he would receive time and one half off work in lieu of cash

compensation for time worked in excess of 40 hours a week.  Lewallen does not know how the compensatory time was kept, and he does not recall whether he was paid for any compensatory time when he was "relieved of his duties" in 2002.  In any event, the Compensatory Time Agreement has no effect on this case because when Lewallen was rehired in 2004, he had to resubmit an application and did not sign a new Compensatory Time Agreement.

There was some evidence at trial that Scott County paid the K-9 officers $1000 more per year to compensate them for the time they cared for and trained their dogs.  The court finds that there was never any agreement between Lewallen and Scott County that $1000 would be adequate compensation for his time spent with the narcotics dog, and in any event Lewallen's salary was less than the lowest pay scale for a K-9 officer so he was not receiving the $1000.  Scott County's finance officer was instructed not to pay Lewallen for his duties as a K-9 officer until the Sheriff approved the pay.  The Sheriff never approved the compensation.

## II. CONCLUSIONS OF LAW

The FLSA provides in relevant part as follows:

> no employer shall employ any of his employees . . . for a
> workweek longer than forty hours unless such employee
> receives compensation for his employment in excess of
> the hours above specified at a rate not less than one
> and one-half times the regular rate at which he is
> employed.

5

29 U.S.C. § 207(a)(1).  There is no dispute that Scott County is an employer within the meaning of the FLSA.  29 U.S.C. § 203(d) & (x) (employer includes a public agency and public agency includes a political subdivision of a state); *accord Christensen v. Harris County*, 529 U.S. 576, 579 (2000).  The Act further provides that employees of a political subdivision may receive "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required." 29 U.S.C. § 207(o).  An agreement or understanding with employees must be arrived at before compensatory time may be used in lieu of overtime pay.  *Id.*

### A.  Scott County's Liability

The first issue to be decided is whether the off-duty time Lewallen spent caring for and training his narcotics dog qualifies as work.  The Supreme Court has defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  This definition includes work performed off-duty.  *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that employees must be compensated for activities performed for the employer before or after a regular work shift if the activities are an "integral and indispensable" part of the employees' principal activities).  The definition even applies when the work is not requested but is "suffered or permitted."  29 C.F.R. § 785.11.  "If the

6

employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."  29 C.F.R. § 785.12.

To determine whether the care and training of the narcotics dog was compensable work, there are three questions to be considered: (1) Did Scott County require or suffer Lewallen to care and train J.J.? (2) Was the care and training of the dog necessarily and primarily for the benefit of the County? and (3) Was the off-duty work an integral and indispensable part of Lewallen's principal activities?  *Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001).  The court concludes that the answer to all three questions is "yes."

Sheriff Carson ordered Lewallen to pick up a black Labrador dog named J.J. and to begin working with the dog in the hope that J.J. eventually would be trained as a narcotics detection dog.  J.J. was to live with and to be taken care of by Lewallen, but he was not Lewallen's dog as evidenced by the fact that the Sheriff had the dog picked up from Lewallen when he was demoted. Sheriff Carson wanted Scott County to have a certified narcotics dog and K-9 officer, as did Sheriff Lay, and the sheriffs were certainly aware that keeping a dog at home would require taking care of it beyond Lewallen's scheduled shifts. Even if Sheriffs Carson and Lay were not aware of the exact amount of time needed to care for and train a narcotics dog, they required Lewallen to perform these activities with J.J.  Sheriff Lay was informed that Lewallen thought he should get paid for taking care of and training J.J. when he was off duty, but he

7

did nothing to curtail Lewallen's time spent with the dog, other than suspending the K-9 program for a few months. Sheriff Lay scheduled the training of J.J. and Lewallen in narcotics detection, and Scott County paid for J.J.'s food, veterinary bills, and other necessities. As the Sixth Circuit held in *Brock*, Scott County "required the officers to take the canines home with them, look after them at all times, keep them well-nourished and in good health, and have them ready for recall to active service at a moment's notice." *Brock*, 236 F.3d at 804.

The court finds that the care and training of J.J. was for the benefit of Scott County, and an integral and indispensable part of the County's K'9 program. After he was certified, Lewallen's principal activity for the Sheriff's Department was working as a K-9 officer. Thus, the time Lewallen spent caring for and training his canine is compensable work.

In addition to *Brock*, other circuit and district courts have recognized that the time spent caring for and training police dogs is compensable work under the FLSA. *See, e.g.*, *Leever v. Carson City*, 360 F.3d 1014, 1017 n.1 (9th Cir. 2004) (recognizing that the City did not dispute that caring for a police dog was compensable work and citing other cases in agreement); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 522 (2d Cir. 1998) (affirming by implication the district court's finding that off-duty time taking care of a police dog was compensable work); *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995) (agreeing with the Department of Labor that "walking, feeding, training, grooming, and

8

cleaning up" are compensable work); *Nichols v. City of Chicago*, 789 F. Supp. 1438, 1443 (N.D. Ill. 1992) (finding that "off-duty time spent caring for canine unit dogs must be compensated as hours worked"); *Truslow v. Spotsylvania County Sheriff*, 783 F. Supp. 274, 279 (E.D. Va. 1992) (same).

Having determined that the off-duty hours Lewallen spent caring for and training J.J. were compensable work, the next issue is whether there was any compensation agreement entered into between the parties that would preclude an award of overtime pay. First, Scott County submits that the "Compensatory Time Agreement" signed by Lewallen when he was hired by Scott County in 2001 bars his claim. The court concludes that the Agreement does not bar Lewallen's claim because he was relieved of duty in 2002, and any agreements he made with Scott County likewise were terminated in 2002. He was not rehired until 2004, and no new agreement was signed.

Second, Scott County submits that it was paying its K-9 officers an additional $1000 per year to compensate them for the off-duty time they spent caring for and training their dogs. There is no evidence in the record that the officers ever agreed to this amount of compensation. Section 785.23 of the Code of Federal Regulations provides that where compensable work is done at home and the exact hours are difficult to determine, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." In the context of off-duty care and training of narcotics dogs, a unilateral decision

9

by the employer concerning the dog handler's compensation will not be considered "reasonable." *See Leever*, 360 F.3d at 1018-20 (finding that the City's agreement to pay $30.00 per week overtime for care of a dog was not reasonable because no inquiry was made into the hours necessary to take care of the dog); *Holzapfel*, 145 F.3d at 526-27 (finding that the two-hour overtime policy was not binding because no K-9 officers were involved in deciding that two hours was sufficient).

In this case, the decision to pay the extra $1000 per year to compensate the K-9 officers appears to be a unilateral decision by the County. Lewallen testified that he knew nothing about it, and in fact, he did not receive it at all until a few days before trial when Scott County's attorney attempted to give Lewallen a check for $1000 in satisfaction of the overtime. Lewallen refused to sign the paper and gave the check to his attorney. Furthermore, the extra $1000 amounts to less than $3.00 per day which, at one and one-half times his regular pay ($10 to $11 per hour), amounts to compensation for about fifteen minutes of overtime. *See Leever v. Carson City*, 360 F.3d 1014, 1019 (9th Cir. 2004) ("at a minimum, an agreement must take into account some approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work").

The court concludes that neither the Compensatory Time Agreement nor the $1000 extra pay preclude Lewallen from seeking compensation for the off-duty time he spent caring for and training his narcotics dog.

### B. *Compensation*

A plaintiff has the initial burden of showing that his employer has violated the FLSA in failing to compensate him for overtime work. If the employer does not have sufficient records of the overtime work,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

Lewallen estimates that he averaged about one and one-half hours of overtime per day caring for and training his dog. This estimate is based on his knowledge of the time he spent on a daily basis feeding, watering, brushing, medicating, and cleaning the dog's kennel, as well as the time he reported on the dog's training logs. Scott County objects to the plaintiff's estimate, but has not

11

presented any evidence that the estimate is unreasonable. Therefore, the court will award Lewallen the amount of compensation he seeks as set out in trial Exhibit 19:

| Time Period | Rate of Pay | Overtime Rate | No. of Days | Overtime Estimate | Unpaid Compensation |
|---|---|---|---|---|---|
| July 1, 2006 to June 30, 2007 | $10.02 | $15.03 | 365 | 1.5 hrs | $8,228.93 |
| July 1, 2007 to Nov. 21, 2008 | $11.78 | $17.67 | 509 | 1.5 hrs | $13,491.05 |
| | | | | **Total** | **$21,719.98** |

### C. *Liquidated Damages*

Lewallen also seeks an equal amount of liquidated damages. The FLSA provides in relevant part as follows:

> Any employer who violates the provisions of section . . . 207 (overtime pay) shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). In order to avoid an award of liquidated damages, the employer has the substantial burden to show that its failure to pay the required overtime was both "in good faith and that [it] had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29

U.S.C. § 260; see Elwell v. Univ. Hosp. Home Care Servs., 276 F.3d 832, 840 (6th Cir. 2002).

Scott County has failed to show that it acted in good faith when it denied overtime compensation to Lewallen or that it had a reasonable belief that the FLSA did not require it to pay the overtime compensation. In fact, the proof is otherwise. Lewallen provided Chief Ellis with printed material that set out the FLSA requirements for compensating dog handlers for off-duty care and training of their dogs [Tr. Exh. 3]. Chief Ellis took the documents to the County Finance Department, which then met with Sheriff Lay. Thus, Scott County through both the Sheriff and the Finance Department had notice that compensation was required, and they failed to comply with the law.

Therefore, Lewallen's claim for liquidated damages will be allowed. For the reasons discussed above, the court finds that liquidated damages in an amount equal to the overtime compensation is appropriate in this case – $21,719.98.

### D. Attorney's Fees

Lewallen is also entitled to "a reasonable attorney's fee to be paid by the defendant and costs." 29 U.S.C. § 216(b). Counsel shall submit a statement of fees and costs with supporting documentation within 30 days of the entry of judgment.

## III. CONCLUSION

Based on the court's findings of fact and conclusions of law, judgment will be entered in favor of the plaintiff Kristofer Lewallen in the amount of $43,439.96.

ENTER:

      *s/ Leon Jordan*
United States District Judge